1812.

REICHART
*v*
CASTATOR.

---

WEISHAUPT and wife *against* BREHMAN and another.

IN ERROR.

*Sunbury,*
*Tuesday,*
*June 9.*

THIS cause came before the court upon a case which stated, that *Andrew Freyberger*, by his will dated 15th of *October* 1803, after devising a plantation to his son *John*, during the life of the testator's wife, made the following bequest,—" and to my two sons *John* and *Jacob* aforesaid, " *I do further give and bequeath* 100*l.* *each in cash.*" He then gave to the three sons of his daughter *Magdalen*, 80*l.* each, to be paid to them by his executors in the year 1816, " or to the survivors or survivor of them at that time, that " is, if any of them should die before that time, the survivor " shall have his or their part;" after which the will proceeded, " after my death no vendue shall be made, till after the " death of my wife *C*, at which time also the plantation shall " be sold, and the remainder of all the money arising from " the sale of my plantation, and the personal estate, *after the* " *aforesaid portions* are paid, *shall be equally divided among* " *my six children, now residing in the state of Pennsylvania,* " OR THEIR HEIRS."

On the second of *August* 1802, *Andrew*, the father, paid *John* the son, 50*l.*, and took from him a receipt in these words, " Received of my father the sum of 50*l.* portion."

The testator by his last will, bequeathed to his son *J.* 100*l.* cash; and then directed that " the remainder " of all the mo- " ney arising " from the sale " of his planta- " tion and the " personal es- " tate, after the " aforesaid por- " tions were " paid (of which " *John's* was " one) should be " equally divi- " ded among " his six chil- " dren or their " heirs." Prior to the date of the will, the testator paid his son 50*l.* and took his receipt for 50*l. portion.—J.* died before the testator.—*Held* that the legacy of 100*l.* to *J.* had lapsed.

*John*, the son, died about four weeks before the father, leaving three children, and a widow, the wife of the plaintiff in error.

The question was whether the legacy of 100*l.* to *John*, was a lapsed legacy. Judgment was rendered in the Common Pleas in favour of the defendants, upon the ground that it was a lapsed legacy.

*Hale* and *Duncan* for the plaintiffs in error, contended that the word "*heirs*," in the residuary devise, should be connected with the devise of the preceding legacies, by which the children of *John* would take; but if this could not be done, the payment of 50*l.* to *John*, shewed that the father had promised him a portion, and the will was intended to carry the promise into effect; it was merely the instrument by which the promise was performed. The case therefore did not stand upon the common footing of a legacy, but of a promise executed by the will, and not affected by the death of the promisee. If a testator says "I forgive *A. B.* a debt, or my "executor shall not demand it," the death of the debtor before the testator does not alter the case. *Elliot* v. *Davenport* (a), 1 *Eq. Abr.* 296. *Sibthorp* v. *Moxom* (b).

*Huston* contra. There is nothing in this will to take the case out of the general rule. The word *heirs* in the residuary devise, is exclusively confined to the devise of the residue. That devise could not be ascertained until after the widow's death, and *heirs* were introduced to provide for the children of such legatees as might die after the testator; whereas the legacy to *John* was payable in the ordinary time. Besides, there is an intervening devise between that to *John* and the residue, where the survivor expressly, and not the heir, takes. Now *heirs* in the residue cannot be annexed to one, without being annexed to all the preceding legacies. The receipt can have no effect, because it was prior to the will. No such thing as a promise appears. This case is provided for by the act of the 19th of *March* 1810; but that act has no retrospect.

(a) 2 *Vern.* 521.                    (b) 8 *Atk.* 581.

TILGHMAN C. J. I should have been very glad to find any thing in this will, to prevent the lapse of the legacy of 100*l.* given to the testator's son *John.* But I see nothing which can exempt it from the operation of the general rule, that a legacy becomes lapsed by the death of the legatee in the life time of the testator. The receipt of 50*l.* given by *John* to his father, can have no effect on the construction of the will, because it bears date above a year before the will was made, and because it seems applicable rather to the general share which *John* would have been entitled to, in case of his father's dying intestate, than to any particular legacy. In case of intestacy, the advances made by the father to each child, are taken into consideration in the division of the estate. I should suppose that when this receipt was given, it was the testator's intention not to make a will.

The counsel for the plaintiffs in error, would connect the devise of the *residue* of the real and personal estate to the testator's six children, *or their heirs,* with the previous bequest of this legacy, so as to shew an intent that in case of death, the legacy should not be lapsed. But this is too forced a construction. The expression *their heirs,* is clearly confined to the devise of the residue of the estate. This residue could not be ascertained, till after the death of the testator's wife, for the estate was not to be sold, nor were the devisees to divide the residue among them till then. Consequently there was a probability, that some of the children would die before they received their share of the residue, and to provide for that event, the *heirs* were introduced; but not so as to this legacy, which was payable immediately, or at farthest, in a year after the death of the testator. Besides, there is another circumstance, which proves incontestably, that the words *their heirs,* cannot be connected with the preceding legacies. A legacy of 80*l.* is given to each of the three sons of *Magdalen Kline,* to be paid to them in the year 1816, *or to the survivors or survivor of them at that time;* this shews that there was no intention that the heir of each legatee should take in case of the death of the ancestor, and it is to be remarked, that the legacy to the *Klines* stands between the legacy to the son *John,* and the devise of the residue. I am therefore of opinion, that the legacy to *John* falls within the general rule, and was lapsed by his death in

1812.

WEIGHAUPT
*v.*
BREHMAN.

the life of the testator. The judgment of the Court of Com-mon Pleas must be affirmed.

Yeates J. No point is better settled, than that a devise of land or personalty to a person who dies in the testator's life time, becomes thereby lapsed, by the general rules of the common law, unless the event is provided for in the will itself. The act of assembly of the 19th of *March* 1810, has very properly altered this law, in the case of a child or any other lineal descendant of a testator, with a provision, that it shall not have a retrospective operation.

I can discover nothing whatever in the will of *Andrew Freyberger*, which can exempt the legacy of 100*l.* devised to his son *John* from the general rule. The devise to his six children, *or their heirs*, of the remainder of all the money arising from the sale of his plantation after the death of his wife, and of the personal estate, can have no operation thereon, by any reasonable construction. For this clause only relates to the surplus of the estate, after the payment of the legacies before bequeathed, on the event of his wife's decease.

It is also perfectly clear, that the son's receipt of 50*l.* por-tion, dated *August* 2d, 1802, can have no influence whatever on the construction of this will, which is dated the 15th of *October* 1803. It preceded the execution of this will fourteen and a half months, and was no doubt intended by way of advancement to his son during his life, but cannot be con-nected with the legacy of 100*l.*

It follows, that the general rule of law must control this bequest, and that the same is lapsed by the death of *John* during his father's life; and I am of opinion, that the judg-ment of the Court of Common Pleas of *Mifflin* county, should be affirmed.

Brackenridge J. was prevented by indisposition, from giving any opinion.

Judgment affirmed.